```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
RYAN COSGROVE and CLIVE RHODEN,      :
                                     :
               Plaintiffs,           :
                                     :      19 Civ. 8993 (VM)
    - against -                      :
                                     :
BLUE DIAMOND GROWERS,                :      DECISION AND ORDER
                                     :
               Defendant.            :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/07/2020

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Ryan Cosgrove and Clive Rhoden ("Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and other similarly situated individuals, bring this action against Blue Diamond Growers ("Blue Diamond" or "Defendant") alleging that the labeling on Blue Diamond's Vanilla Almond Milk (the "Product") was materially misleading. Plaintiffs assert eight causes of action on behalf of the putative class: (1) violation of the New York General Business Law ("G.B.L.") Section 349; (2) violation of G.B.L. Section 350; (3) negligent misrepresentation; (4) breach of express warranty; (5) breach of implied warranty of merchantability; (6) violation of the Magnuson Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301, *et seq.*; (7) fraud; and (8) unjust enrichment.

The Court construes the correspondence submitted by Defendant as a motion by Defendant to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure

1

("Federal Rule") 12(b)(6) (the "Motion," Dkt. No. 18).[1] For the reasons discussed below, Defendant's Motion is GRANTED.

## I. BACKGROUND

A. Facts and Procedural Background[2]

Plaintiffs are two citizens of New York who purchased the Product in New York. The Product is labeled with representations that include "Almond Breeze," "Almondmilk," and "Vanilla." Plaintiffs contend this labeling is misleading because "it has less vanilla than the label represents, contains non-vanilla flavors which provide its vanilla taste and contains artificial flavors, not disclosed to consumers on the front label as required by law and consumer expectations." (Amended Complaint, Dkt No. 15, ¶ 4.) Plaintiffs contend that the Product is not flavored by "authentic" vanilla, or the vanilla flavor extracted from the tropical orchid of the genus Vanilla (*V. planifolia*). Instead, Plaintiffs allege Defendant fortifies trace amounts

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] The factual background below, except as otherwise noted, derives from the Amended Complaint ("Amended Complaint," see Dkt. No. 15) and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except when specifically quoted, no further citation will be made to the Amended Complaint or the documents referred to therein.

2

of this "authentic" vanilla with vanillin, a naturally occurring substance obtained from tree bark which simulates vanilla flavor. As proof for this allegation, Plaintiffs provide the results of a gas chromatography-mass spectrometry ("GS-MS") analysis of the Product. Plaintiffs contend the GS-MS report shows that only trace amounts of authentic vanilla are contained within the Product and comparably larger amounts of vanillin are used. The ingredient list on the back of the Product's packaging does not list either vanilla or vanillin as an ingredient. Instead, the Product represents that it contains "Natural Flavors." Plaintiffs contend this labeling is misleading and in violation of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.*

Plaintiffs filed the initial Complaint in this action on September 27, 2019. (Dkt. No. 1.) Soon after, Defendant notified Plaintiffs of certain alleged deficiencies in the complaint. (Dkt. No. 13.) In lieu of a response, Plaintiffs filed an Amended Complaint. (See Dkt. No. 15.)

B. The Motion

Shortly after Plaintiffs filed the Amended Complaint, Defendant, by letter, moved to dismiss the Amended Complaint. (See Motion.) This Motion followed an exchange of letter correspondence between the parties, in accordance with the Court's individual rules, including Defendant's letter dated

3

March 19, 2020 (see Dkt No. 18-1), and Plaintiffs' response dated March 23, 2020 (see Dkt No. 18-2). In the Motion, Defendant argues that the Amended Complaint should be dismissed because: (1) Plaintiffs cannot privately enforce FDCA; (2) Plaintiffs have not plausibly pled that the labeling of the Product is misleading; (3) Plaintiffs fail to allege an injury; (4) Plaintiffs lack standing; (5) Plaintiffs fail to state a claim for fraud because there is no materially misleading statement; (6) Plaintiffs fail to state a claim for negligent misrepresentation because there is no "special relationship," the economic loss doctrine bars the claim, and the allegations do not meet Federal Rule 9(b)'s heightened pleading standard; (7) Plaintiffs' breach of express and implied warranty claims, as well as the MMWA claim, fail for lack of privity, no misstatement, no allegation that the Product is unfit for human consumption, and no written warranty; and (8) Plaintiffs' unjust enrichment claim is duplicative of its other claims.

Plaintiffs respond that: (1) they do not seek to privately enforce the FDCA; (2) they have adequately pled the Product's label is materially misleading; (3) they adequately allege injury because they paid for the misleadingly labeled Product; (4) they have standing because they seek injunctive relief; (5) the fraud claims are pled with particularity; (6)

4

they have adequately pled a special relationship between the parties; (7) New York no longer requires privity and therefore the express warranty, implied warranty, and MMWA claims are sufficiently pled; and (8) the unjust enrichment claim should proceed in the alternative until definitively proven to be duplicative. (See "Response," Dkt. No. 19).

After the initial Motion and Response were filed, both Plaintiffs and Defendant filed notices of supplemental authority with the Court. (See Dkt. Nos. 20-25). These notices, along with the various responses and replies, have been considered by the Court in connection with this Order.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss [pursuant to Federal Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of the Court in

5

ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). The Court must accept all well-pleaded factual allegations in the Amended Complaint as true and draw all reasonable inferences in Plaintiffs' favor. See Chambers, 282 F.3d at 152 (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2011)).

### III. DISCUSSION

A.  Actionability of Plaintiffs' Claims

Plaintiffs bring eight causes of action, all premised on the same contention: Defendant's labeling of the Product is materially misleading. Thus, if Defendant's Product does not misrepresent the contents of the container as a matter of law, all of Plaintiffs' claims must be dismissed. Because the Court is not persuaded that the labeling of the Product is misrepresentative or misleading, the Court will dismiss Plaintiffs' claims.

"It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013). "Courts view each allegedly misleading statement in light of its context on the

6

product label or advertisement as a whole." Wurtzburger v. Ky. Fried Chicken, No. 16 Civ. 08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (internal quotation marks omitted); see also Fink, 714 F.3d at 742 ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). Determining whether a product label or advertisement is misleading is an "objective" test, and thus liability is "limited to those [representations] likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 745 (N.Y. 1995).

The Court finds the Product is not misleading because a reasonable consumer would associate the representation of "Vanilla" -- with no additional language modifiers -- to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient. See Pichardo v. Only What You Need, Inc., No. 20 Civ. 493, 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020); Steele v. Wegmans Food Mkts., Inc., No. 19 Civ. 9227, 2020 WL 3975461, at *2 (S.D.N.Y. July 14, 2020); see also Brumfield v. Trader Joe's Co., No. 17 Civ. 3239, 2018 WL 4168956, at *2 (S.D.N.Y. Aug. 30, 2018). That association, of "Vanilla" as a flavor and not an ingredient, is borne out by consumers' practical use of the representation. For example, here, the

7

consumer in the grocery store is looking, first and foremost, for almond milk – not vanilla. The large font "Vanilla" on the front of the Product allows the consumer to quickly understand the flavor of the almond milk and differentiate between products. See Pichardo, 2020 WL 6323775, at *5; Steele, 2020 WL 3975461, at *2. The Product makes no additional representations about how that flavor is achieved. Thus, without more, the "Vanilla" representation would be misleading only if the Product did not actually taste like vanilla, but Plaintiffs concede it does. Accordingly, use of the "Vanilla" representation on the Product is not misleading.

Employing similar rationale, two courts in this district have recently dismissed essentially identical claims with respect to a "Smooth Vanilla" protein drink and "Vanilla" ice cream. See Pichardo, 2020 WL 6323775, at *3-5; Steele, 2020 WL 3975461, at *2. The plaintiffs in both of those cases made the same basic allegation as Plaintiffs do here: labeling the respective products as "Vanilla," despite use of only trace amounts of vanilla extract, was materially misleading. Both courts rejected those claims.

The court in Steele explained:

> The Wegmans container does not mention vanilla beans, or bean extract, and even if vanilla or bean extract is not the predominant factor, if the sources of the flavor are

8

>  natural, not artificial, it is hard to see where there is deception. What is misrepresented? The ice cream is vanilla flavored. The sources of the flavor are natural, not artificial.

2020 WL 3975461, at *2. The court in Pichardo similarly stated:

> [T]he label on Defendant's protein drink does not state that it is "made with vanilla extract" or even contain the words "vanilla extract." There is no basis, therefore, to conclude that a reasonable consumer would be misled by the label to believe that all (or even most) of the vanilla taste comes from vanilla extract.

2020 WL 6323775, at *3.

So too here. Defendant's Product does not use the words "vanilla bean" or "vanilla extract," nor does it use language such as "made with vanilla" or anything similar. The Product makes one representation -- that it is vanilla flavored -- and Plaintiffs do not allege that the Product did not deliver on that representation. This alone is fatal to Plaintiffs' case.

Plaintiffs cite a number of cases in support of their theory that a reasonable consumer might find the Product's label misleading. But in each of these cases, the label of the product at issue either (1) made representations about an ingredient and not a flavor; (2) contained a representation about a flavor with additional modifiers; or (3) made representations about products for which consumers have a demonstrated reasonable belief regarding the inclusion of a

9

particular ingredient. See, e.g., Sharpe v. A & W Concentrate Co. & Keurig Dr. Pepper Inc., No. 19 Civ. 768, 2020 WL 4931045, at *5 (E.D.N.Y. Aug. 24, 2020) (noting that the product represented it was "made with aged vanilla"); Izquierdo v. Panera Bread Co., 450 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (noting that in the context of baked goods, reasonable consumers might expect real blueberries); see also Mantikas v. Kellogg Co., 910 F.3d 633, 637 (2d Cir. 2018) (noting that a product's labeling of "Whole Grain" was a representation about an ingredient). Plaintiffs cases are therefore inapplicable to a case where, as here, there is a representation only about the flavor of the product.

Finally, Plaintiffs contend their case is distinguishable from Steele and Pichardo in three ways, which they argue give the Court bases to set aside the reasoning that led to dismissal in those cases. These arguments are not persuasive.

First, Plaintiffs argue that they have alleged that the use of vanillin makes the product "taste differently from the name of the flavor indicated." (Dkt. No. 24, at 1.) In particular, Plaintiffs argue that the Product "lacks the cinnamon, fruity, floral, creamy and buttery notes expected from authentic vanilla." Id. But this argument is belied by the allegations in the Amended Complaint, which, for example,

10

admit the Product uses vanillin "to achieve the *same vanilla taste*." (Amended Complaint ¶ 66 (emphasis added).) And further, Plaintiffs present no allegations that would show their argument regarding the taste of "authentic" vanilla is anything but a subjective one, not shared by the reasonable consumer. See, e.g., Pichardo, 2020 WL 6323775, at *6 (citing Danone, US, LLC v. Chobani, LLC, 362 F. Supp. 3d 109, 120 (S.D.N.Y. 2019)).

Second, Plaintiffs argue that they allege the materiality of the presence of artificial vanilla flavoring, but the plaintiffs in Pichardo and Steele failed to make similar allegations. But this argument goes only to materiality; it has no bearing on whether the Product's labeling was misleading in the first place. Because the Court here finds that the representations were not misleading, it need not address materiality.

Finally, relying on the results of their GS-MS analysis, Plaintiffs argue that they sufficiently allege that the proportion of real vanilla to vanillin is much smaller here than in either Steele or Pichardo, rendering the label misleading. This argument would be more persuasive if the Product made representations about the presence of a specific ingredient, as the products in Sharpe and Mantikas did. But, as discussed above, when a product makes representations

11

about only the flavor, the appropriate inquiry is whether the product indeed has that flavor. Here, there is no well-pled allegation that the Product does not taste like vanilla. And, as the Pichardo Court noted, there is good reason to doubt allegations that a reasonable consumer would find the percentage of authentic vanilla material:

> Because the Court can take judicial notice that the grocery store shelves are stocked with many vanilla-flavored beverages that sell just fine, the Court cannot accept the conclusory allegation contained in the [First Amended Complaint] as a well-pled allegation that consumers view the percentage of vanilla taste that derives from vanilla extract to be a material fact that influences consumers' buying habits.

Pichardo, 2020 WL 6323775, at *6.

Thus, the Court is persuaded that this case is on all fours with Steele and Pichardo with respect to the relevant analysis. The Court therefore joins those courts in dismissing claims related to misleading labeling of vanilla flavored products.

### IV. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Motion (Dkt. No. 18) of defendant Blue Diamond Growers to dismiss the Amended Complaint (Dkt. No. 15) of plaintiffs Ryan Cosgrove and Clive Rhoden, on behalf of themselves and all others similarly situated (collectively "Plaintiffs") is **GRANTED**.

The Clerk of Court is directed to dismiss all pending motions and to close this case.

**SO ORDERED.**

Dated: New York, New York
       07 December 2020

                                    _____
                                        Victor Marrero
                                           U.S.D.J.